UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re ) | |
| ) | |
| WILLIAM BRIAN DORN, ) | Case No.  6:10-bk-06282-KSJ |
| SUMMER MURPHY-DORN, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| _____ ) | |
| In re ) | |
| ) | |
| SCOTT HOWARD SCHMIERER, ) | Case No.  6:10-bk-12174-KSJ |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |

## MEMORANDUM OPINION DENYING MOTIONS TO EXAMINE FEES

The United States Trustee argues that the debtors' attorney in both cases, Marilyn J. Hochman, charged an unreasonable fee and should disgorge the monies she received.[1] Bankruptcy Code § 329(b)[2] allows the bankruptcy court to examine the amount of compensation paid to bankruptcy counsel and, "[i]f such compensation exceeds the reasonable value of any such services, the court may…order the return of any such payment, to the extent excessive." Because the Court finds that the compensation paid to Hochman is reasonable in light of Hochman's experience, the amount of time she spent with her clients, and the results she obtained for them, the Court will deny the U.S. Trustee's motions.

The United States Trustee filed these two motions requesting that Hochman disgorge fees the Court finds excessive above the reasonable value of services provided to the debtors.[3]  At

---

[1] Motion to Examine Fees Paid to Attorney Pursuant to 11 U.S.C. § 329(b) (Doc. No. 19 in case no. 6:10-bk-6282-KSJ; Doc. No. 14 in case no. 6:10-bk-12174-KSJ).
[2] All references to the Bankruptcy Code shall be to Title 11 of the United States Code.
[3] On September 21, 2010, the U.S. Trustee filed a similar motion to examine Hochman's fees in a case overseen by the Hon. Arthur B. Briskman, *In re Patrick & Jill Williamson*, case no. 6:10-bk-5992-ABB, Doc. No. 30.

two evidentiary hearings,[4] the U.S. Trustee examined Hochman and two local bankruptcy attorneys with extensive Chapter 7 filing experience, Todd Budgen and Lori Patton. Based on Budgen's and Patton's testimony and on a chart of fees charged by attorneys filing the most Chapter 7 cases in Orlando,[5] the average cost of hiring a lawyer to file a Chapter 7 in Orlando ranges between $1,250 - $2,500, exclusive of costs. Both Budgen and Patton testified that, since the economic downturn began in 2008, the Orlando market recently has experienced a high degree of downward pressure due to an influx of new practitioners. As a consequence, both acknowledged that many Chapter 7 attorneys currently charge fees less than the actual cost of providing legal services. Thus, many attorneys, even those with extensive experience, actually are losing money with every Chapter 7 case they file.

Hochman, on the other hand, has not reduced her prices. She typically charges $3,250 per Chapter 7 case (less expenses). She testified that she has been using this rate for many years and that she determined this amount after averaging the amount of time she and her paralegal spend on a typical bankruptcy case and multiplying this number by their respective billing rates. Hochman's rate is $295/hour; her paralegal's rate is $105/hour, well within the range of normal hourly rates in the Orlando area.

Although Hochman has filed bankruptcy cases since 1985, she does *substantially* less Chapter 7 work than most attorneys specializing in bankruptcy law.[6] In 2010, she filed only ten bankruptcy petitions.[7] By comparison, Budgen and Patton each filed 160 or more Chapter 7 cases in 2010. Hochman testified that she tells potential clients that her rate is high but that she

---

[4] This Court held evidentiary hearings on December 7, 2010, and January 10, 2011.
[5] Trustee's Ex. 9. The chart was prepared by Budgen as part of his law firm's standard market analysis. He prepared it by gathering ten random samples of fees reported for each of the top ten filers' fee disclosure statements filed pursuant to Bankruptcy Rule 2016(b).
[6] Hochman primarily practices family law.
[7] She filed nine Chapter 7 petitions and one Chapter 13.

promises to spend a lot of time guiding them through the bankruptcy process. Indeed, Hochman summed up her Chapter 7 business model thusly: "…we don't get that many clients. But the ones that we do, we are there for them and we coddle them, and that takes time."[8] She also will refer clients to lower cost attorneys.

Here, she charged the Dorns $3,450 in attorney fees for what appears to be a fairly straightforward no-asset Chapter 7 bankruptcy case and preparation of a motion to dismiss a civil complaint.[9] She charged Mr. Schmierer $3,369 in attorney fees for a slightly more complicated case.[10] After paying Hochman's fees up front, both debtors were later sent a final invoice that included costs of a credit report, reimbursement for mileage, tolls, and parking, and the Chapter 7 filing fee.[11]

None of the debtors object to Hochman's fees. Hochman explained her fees to the debtors upfront at an initial face-to-face meeting. Both debtors signed identical retainer agreements that thoroughly explain the basis for the fees charged and likely additional expenses.[12] They appear satisfied with Hochman's work.

Hochman's time sheets for each of these cases show that she and her paralegal spent a significant amount of time working on these cases. Together they spent 17.4 hours working on the Dorn case, with Hochman providing approximately 10 hours of services,[13] and 18.2 hours working on the Schmierer case, with Hochman providing approximately 11 hours of services.[14] By contrast, Budgen testified that he and his paralegal *combined* spend about 10 hours working on the average Chapter 7 filing; likewise, Patton stated she and her paralegal spend a *combined*

---

[8] January 10, 2011 Transcript, p. 59, ¶¶ 6-8.
[9] Doc. No. 1 in 6:10-bk-06282-KSJ; Trustee's Ex. 4.
[10] Doc. No. 1 in 6:10-bk-12174-KSJ; Trustee's Ex. 8.
[11] Trustee's Exs. 4 and 8. The Dorns' total fees and costs add up to $3,899.00. Mr. Schmierer's fees and costs add up to $3,879.00.
[12] Trustee's Exs. 3 and 7.
[13] Trustee's Ex. 4.
[14] Trustee's Ex. 8.

total of 5-7 hours on the average Chapter 7 filing. Hochman's time in these cases was spent primarily on the initial client interview; inputting data into a computer program to create the bankruptcy petition, schedules, and statements; emailing the debtors and various other parties; and attending the § 341 meeting of creditors.[15] She spends time with her clients explaining a confusing process and personally helps them through the maze of a bankruptcy case.

The question now is whether, under § 329 of the Bankruptcy Code, Hochman's compensation in these two Chapter 7 cases "exceeds the reasonable value of" the services she provided to these two particular debtors. The Eleventh Circuit Court of Appeals has adopted the lodestar method to determine the reasonableness of fees charged by professionals.[16] Under the lodestar method, courts multiply the reasonable hourly rate for services rendered by the number of hours reasonably expended on the matter. After calculating the reasonable fee, a court may consider other factors to adjust the fee award upward or downward.[17] These factors are set forth in § 330 of the Bankruptcy Code[18] and in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[19]

Applying the lodestar analysis to the fees Hochman charged in these two cases, the Court concludes she charged both debtors a reasonable amount for the value of the services provided. The hourly rate Hochman charges ($295/hour) is reasonable for her services in light of her

---

[15] Trustee's Exs. 4 and 8. Though the invoices do not show Hochman's attendance at the § 341 meetings, she testified that she personally attends all of her clients' § 341 meetings.
[16] *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988).
[17] *In re Howell*, 226 B.R. 279, 281 (Bankr. M.D. Fla. 1998).
[18] Section 330(a)(3) states that relevant factors include "(A) the time spent on such services; (B) the rates charged for such services; …(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; …(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."
[19] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

experience. She personally spent between 10-11 hours on each case for a total of $2,950 - $3,245, and her paralegal ($105/ hour) spent an additional 7 hours for an additional amount of $735. Adding these amounts, the Court finds $3,685 - $3,980 is a reasonable amount of fees to pay for the "luxury" Chapter 7 services Hochman provided. None of the other lodestar factors merit any addition or reduction to Hochman's fee.

Most consumer bankruptcy lawyers, however, charge a much lower flat rate choosing not to keep time records. Bankruptcy attorneys, such as Budgen and Patton, largely rely on paralegals to complete the necessary pleadings, to maintain client contact, and to follow up with loose ends, all work which Hochman personally completes. Chapter 7 cases are most often handled in high volume practices that are "standardized and systematized, and much of the work is capable of performance by paralegals."[20] As such, courts reviewing reasonable fees in Chapter 7 cases usually do not focus on a reasonableness determination under the lodestar analysis.[21] Rather, courts look to the "market" to assess reasonable attorney fees for the typical Chapter 7 consumer bankruptcy lawyer.[22]

Attorney Hochman, however, is not a typical bankruptcy attorney. She does not have a high-volume bankruptcy practice, filing approximately ten bankruptcy cases a year. She promotes her bankruptcy practice as a "luxury" service promising to personally hold her clients' hands through the bankruptcy process. She offers to spend her own time, as opposed to her paralegal's time, meeting with clients, preparing their schedules, answering their questions, and explaining the complicated and sometimes confusing bankruptcy procedures. Hochman

---

[20] *In re Howell,* 226 B.R. at 281.
[21] *Chamberlain v. Kula (In re Kula)*, 213 B.R. 729, 736 (8th Cir. BAP 1997); *In re Howell*, 226 B.R. at 281.
[22] *In re Gonzalez*, 402 B.R. 900, 901 (Bankr. M.D. Fla. 2009) (holding that $1,500 is the maximum amount any Chapter 7 debtor's attorney may receive in compensation, absent special circumstances); *In re Bader*, 118 B.R. 817, 819 (Bankr. N.D. Fla. 1990) (holding $1,000 was a reasonable fee and ordering debtor's attorney to disgorge $4,000 to Chapter 7 trustee).

provided all of these services to the debtors in both of these cases. Indeed, the objecting party is the U.S. Trustee, not the debtors, who apparently are satisfied with the services Hochman provided to them, even at the greater cost to them. Further, she tells her clients that she can refer them to the high-volume consumer bankruptcy lawyers if they want to spend less on their attorney fees. She also kept time records, something few other consumer bankruptcy lawyers maintain. Hochman substantiated both the time she spent on these cases and the fact that her standard hourly rate is reasonable. As such, the lodestar method is exactly appropriate to determine the reasonableness of Hochman's fees.

In specifically finding that the fees charged by Hochman are reasonable, the Court absolutely is not opening the floodgates to allow the same amount of fees for the high-volume Chapter 7 lawyer who does not provide similar services. The Court's calculation under the lodestar method is particular to the "luxury" services model, and demonstrates here that Hochman's fees are approximately equal to or less than the reasonable value of *her* services. At least *some* market participants—namely, the debtors here—agreed or they would have hired less expensive counsel.

The Court also declines the invitation of the U.S. Trustee to set an outright cap on attorneys' fees for Chapter 7 cases. Market forces and participants, on whole, do a much better job than courts of determining what is reasonable to pay for a given attorney's services. Markets are fluid and dynamic. Market rates are dependent on innumerable and largely unpredictable variables. Thus, a typical fee today is likely to change next year, let alone five years from now.

The beauty of a free market for goods and services is that a consumer is indeed free to choose among a variety of providers who cater to nearly all tastes. Many debtors will chose (or lack funds) to pay no more than the bare minimum for legal representation; others will select to pay a premium for the services Hochman and other similar attorneys provide. In exchange for a

higher fee, the debtors get more personal attention.  The Court will not presume that all debtors have the same preferences when it comes to attorneys and so will not meddle with the market for attorneys' fees simply because Hochman's rate is higher than the Orlando average.  Hochman's fees are reasonable for *what she provides*.

As a famous economist once said about buying and selling in a free market, "no exchange takes place unless both parties benefit."[23]  The Bankruptcy Code rightfully attempts to ensure that vulnerable debtors benefit from their bankruptcy attorneys by subjecting attorneys' fees to reasonableness review.  This should not be, however, an invitation for the bankruptcy court to impose upon the market what it thinks attorneys' fees *should be*.  Courts should only limit fees where an attorney's fees are plainly unreasonable in light of the factors set forth above.  Hochman has adequately explained the basis for her fees in these cases, and the Court finds the fees charged were reasonable in light of her experience, the services she provided, and the results she obtained, under a lodestar analysis.  The U.S. Trustee's motions[24] are denied.  A separate order consistent with this memorandum opinion will be entered simultaneously.

DONE AND ORDERED in Orlando, Florida, on March 9, 2011.

KAREN S. JENNEMANN
United States Bankruptcy Judge

---

[23] Quotation attributable to Milton Friedman.
[24] Doc. No. 19 in case no. 6:10-bk-6282-KSJ; Doc. No. 14 in case no. 6:10-bk-12174-KSJ.

Copies provided to:

Debtors:  William Brian Dorn and Summer Murphy-Dorn, 1577 Maidencane Loop, Oviedo, FL  32765

Chapter 7 Trustee:  Leigh R. Meininger, P.O. Box 1946, Orlando, FL  32802-1946

Debtor:  Scott Howard Schmierer, 231 Holiday Lane, Winter Springs, FL  32708-3203

Chapter 7 Trustee:  Emerson C. Noble, P.O. Box 195008, Winter Springs, FL  32708-3203

Debtors' Counsel:  Marilyn J. Hochman, Hochman & Peppler LLC, 3208 W. Highway 426, Suite 2000, Oviedo, FL  32765

United States Trustee, Attn:  Timothy S. Laffredi, 135 W. Central Blvd, Suite 620, Orlando, FL  32801