UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| WILLIAM BRIAN DORN, | ) | Case No.  6:10-bk-06282-KSJ |
| SUMMER MURPHY-DORN, | ) | Chapter 7 |
| | ) | |
| Debtor[s]. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SCOTT HOWARD SCHMIERER, | ) | Case No.  6:10-bk-12174-KSJ |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |

MEMORANDUM OPINION
RECONSIDERING ALLOWANCE OF ATTORNEY FEES ON REMAND

The United States District Court remanded these cases asking this Court to determine the reasonable value of legal (as opposed to clerical or other non-lawyer) services Marilyn J. Hochman, attorney for the debtors, provided to each debtor in connection with their Chapter 7 bankruptcy cases.[1] Finding the flat fees Ms. Hochman charged were less than the actual value of her legal services, the Court will not require Ms. Hochman to disgorge her fees.

Ms. Hochman provided "luxury bankruptcy representation" to her clients by spending an above-average amount of time guiding them through the maze of bankruptcy. After Ms. Hochman explained the reason for her higher rates, the Dorns agreed to pay her $3,450 for their fairly straightforward, no-asset Chapter 7 case.  Mr. Schmierer similarly agreed to pay Ms. Hochman $3,369 for a slightly more complicated Chapter 7 bankruptcy case. Given the nature of services and attention Ms. Hochman provided to each debtor, none of the debtors objected to her fees.

---

[1] Doc. No. 24 in Case No. 6:11-cv-00664-MSS; Doc. No. 9 in 6:11-cv-00665.

The United States Trustee nevertheless considered Ms. Hochman's compensation excessive and sought disgorgement to the extent the Court found it unreasonable.[2] The Court examined itemized invoices of her fees (the initial fee affidavits) using the "lodestar" analysis and concluded the amounts Ms. Hochman charged for the Dorns' and Mr. Schmierer's bankruptcies were in fact reasonable.[3] On appeal, the District Court agreed that the actual rates Ms. Hochman charged were consistent with the luxury services provided, ($105 per hour for paralegal services and $295 per hour for legal services) but remanded the case to this Court to reduce Ms. Hochman's overall compensation to the extent she billed for time spent on non-legal work and unnecessary services.[4] The Court ordered Ms. Hochman to submit revised fee affidavits distinguishing the amount of time she spent working on each of the respective debtors' bankruptcy cases performing legal work and non-legal work.[5]

The Bankruptcy Code allows a bankruptcy court to award a debtor's attorney reasonable compensation for actual, necessary services rendered.[6] "An attorney may be awarded fees in a bankruptcy proceeding only to the extent that the hours she claims are indeed compensable as valid attorney time."[7] Paralegal fees also are recoverable, however purely clerical tasks are not.[8] The attorney claiming fees must demonstrate that the fees represent reasonably necessary work that could not have been performed by non-legal employees. Fee applicants are required to exercise "billing judgment" and exclude hours that are unreasonable to bill a client irrespective of skill, reputation, or experience of counsel.[9]

---

[2] Motion to Examine Fees, Doc. No. 19. All references will be to the Dorn case, Case No. 6:11-bk-06282 unless otherwise noted.
[3] Doc. No. 38.
[4] Doc. No. 24 in Case No. 6:11-cv-00664; Doc. No. 9 in 6:11-cv-00665.
[5] Doc. No. 52.
[6] 11 U.S.C. § 330. All references to the Bankruptcy Code refer to 11 U.S.C. § 101 *et seq.*
[7] *In re U.S. Golf Corp*, 639 F.2d 1197, 1207 (5th Cir. 1981).
[8] Case No. 6:11-cv-00664-MSS. Doc. No. 24 (citing *In re U.S. Golf Corp*, 639 F.2d at 1207).
[9] *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) (citing the U.S. Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S. Ct. 1933 (1983)).

Attorneys are compensated at a higher rate than paralegals or legal assistants because attorneys "possess legal skill and a knowledge of the law greater than that possessed by the average citizen," and they are required to comply with more stringent ethical codes of conduct.[10] The purpose of drawing such a distinction between attorneys practicing law and those assisting them is primarily to protect the public.[11]

On remand it is this Court's task to "gather such additional information and evidence and to conduct such further review and analysis as the Court deems appropriate . . . which fairly reduce[s] Ms. Hochman's compensable attorney time spent performing non-legal tasks."[12] A court has wide discretion to determine appropriate attorney fees, but that discretion must be based on a meaningful review of the fees, and a court must articulate its decisions by giving principled reasons for its calculations.[13]

The Court initially asked Ms. Hochman to provide revised fee affidavits that clearly delineated clerical from attorney tasks. As the United States Trustee noted in its response, the revised fee affidavits[14] Ms. Hochman submitted to assist in this process do not accomplish this request because they "fail to satisfy the straight-forward directive imposed by the Court's Order."[15] Clerical duties listed by Ms. Hochman in her revised fee affidavits are not distinguished from paralegal duties, and some clerical duties are still billed at paralegal rates. For example, in her revised fee affidavit for the Dorns, Ms. Hochman reduced the fees she billed for November 13, 2009, to paralegal rates, but did not subtract the clerical services performed. For both debtors she continues to charge for clerical tasks such as making copies, data input, making simple phone calls, scanning documents, and emailing clients with basic requests.

---

[10] *Samuels v. American Legal Clinic, Inc. (In re Samuels),* 171 B.R. 616, 620 (Bankr. M.D. Fla. 1994).
[11] *Samuels,* 171 B.R. at 620.
[12] Case No. 6:11-cv-00664-MSS. Doc. No. 24 at 13–14.
[13] *Norman*, 836 F.2d at 1301-04.
[14] Doc. No. 60.
[15] U.S. Trustee's Response to Marilyn Hochman's Brief with Revised Affidavit of Attorney Fees. Doc. No. 63.

Ms. Hochman's revised fee affidavits also inexplicably substantially increased the number of billable hours from the initial fee affidavits.[16]  In the revised fee affidavits,[17] Ms. Hochman increases the number of hours she claims to have worked on the debtors' cases.  In the Dorn case, she increased the hours claimed from 17.40 to 26.35; in the Schmierer case, she increased the hours claimed from 18.20 to 24.90.

Ms. Hochman also bills for additional services that were never mentioned in the initial fee affidavits. For example, in the Dorns' initial fee affidavit, she indicates she started billing for bankruptcy services on May 25, 2009.  Her revised fee affidavit, submitted more than a year later, includes fees for bankruptcy services performed as early as May 6, 2009.  Ms. Hochman never explains why she increased the number of hours billed or why she failed to list these additional services in her initial fee affidavit. Due to the significant discrepancies between the initial and revised fee affidavits, and because Ms. Hochman essentially failed to remove clerical time from her initial affidavits, the Court will disregard the revised fee affidavits and use Ms. Hochman's initial fee affidavits to remove allowance of any compensable time she spent performing non-legal, clerical-type tasks.

A court adjusts a fee by starting with the lodestar analysis and making downward adjustments for redundant, unreasonable, or unnecessary hours.[18] Ms. Hochman's initial fee affidavits[19] indicate she provided $3,765 *worth* of services to the Dorns and $4,020 *worth* of services to Mr. Schmierer.[20] Using this as the starting point, the Court then will eliminate all non-compensable services provided by Ms. Hochman to her clients as follows:[21]

---

[16] Doc. No. 1 at 39.
[17] Doc. No. 60, Exhibits 2 and 3.
[18] *Norman*, 836 F.2d at 1301–02.
[19] Doc. No. 1 at 39.
[20] Ms. Hochman's flat fees saved the Dorns $315 and Mr. Schmierer $651 because the value of the services rendered was greater than the flat rates she actually charged them of $3,450 and $3,369 respectively.
[21] An analysis of the fee adjustments can be found in Appendix A.

For the Dorns:

1. 11/13/2009—The second entry for this date is stricken because ordering a credit report is purely of a clerical nature and requires no special legal skill.

2. 11/13/2009—The last entry for this date is reduced to $105/hour for 0.25 hours because a majority of the tasks described (such as organizing a file, separating documents, making file folders by category with tabs for each section, organizing statements by date, ensuring forms are complete, preparing a cover sheet, and gluing a cover sheet on red roper) are purely clerical in nature.

3. 3/30/2010—This entry is stricken because photocopying and scanning documents are purely of a clerical nature.

4. 4/29/2010—This entry is stricken because sending a simple email reminding the client of something is purely of a clerical nature.

The value of services provided to the Dorns after making these reductions is $3,447, compared to the initial $3,450 flat fee they paid.

For Mr. Schmierer:

1. 5/24/2010—This entry is reduced to $105/hour for 0.25 hours because a majority of the tasks described (such as organizing a file, separating documents, making file folders by category with tabs for each section, organizing statements by date, ensuring forms are complete, preparing a cover sheet, and gluing a cover sheet on red roper) are purely clerical in nature.

2. 5/26/2010— This entry is stricken because photocopying and scanning documents are purely of a clerical nature.

3. 07/14/2010— This entry is stricken because sending a simple email reminding the client of something is purely of a clerical nature

4. Identical entries listed on 7/19/2010; 7/20/2010; and 7/26/2010 are stricken because reviewing returned mail for a better address is purely of a clerical nature.

The value of services provided to Mr. Schmierer after making these reductions is $3,768, compared to the initial $3,369 flat fee he paid.

These reductions to Ms. Hochman's itemized compensation do not impact her overall fees because the flat rates she charged to the Dorns and Mr. Schmierer of  $3,450 and $3,369,

respectively, still are less than or fairly equivalent to the $3,447 and $3,489 the debtors would have owed on an itemized basis, as adjusted downward by the Court.

Although Ms. Hochman provided valuable services to the debtors and is entitled to reasonable compensation for her work, courts can deny attorney compensation in whole or in part if an attorney intentionally misrepresents facts with the intent to deceive the court.[22] In such a case, a court may order an attorney to disgorge fees or reduce an attorney's overall compensation.[23]

In the cases here, Ms. Hochman's revised fee affidavits, which increase dramatically the amount of time she alleges to have worked on each of the debtors' cases, come dangerously close to misrepresentation because they fail to explain the reason for the substantial increase in the time she claims to have worked on these cases. Ms. Hochman was given ample opportunity to justify her billing practices and to provide specific reasons why her initial fee affidavits were deficient. Instead of working from her initial fee affidavits to clarify which of her fees constitute clerical work, Ms. Hochman submitted totally new fee affidavits that increase the amount of time she allegedly spent on these cases by as much as 51 percent.

Where the time an attorney submits to the court seems expanded or there is a lack of documentation or testimonial support, a court should rule based on its own judgment and experience.[24] This Court has observed that the debtors were able to afford Ms. Hochman's services, and she fairly and adequately represented them. Indeed, she provided superior service to her clients. She just appears unable or unwilling to keep accurate records of her services. Based on her initial fee affidavits and completely disregarding her revised fee affidavits altogether, the fair value of her services is still equal to or greater than the flat fees she actually

---

[22] *In re Evangeline Refining Co.,* 890 F.2d 1312, 1323 (5th Cir. 1989); *In re Teknek, LLC*, 394 B.R. 884 (Bankr. N.D. Ill. 2008).

[23] *In re R&R Associates of Hampton,* 248 B.R. 1, 6 (Bankr. D. N. H. 2000) (citing *Universal Oil Products Co. v. Root Refining Co.,* 328 U.S. 575, 580, 66 S. Ct. 1176 (1946)).

[24] *Norman,* 836 F.2d at 1301-03 (citations omitted).

charged, and the Court will not require Ms. Hochman to disgorge additional fees.  She is cautioned, however, that in the future, she needs to implement office practices that clearly keep accurate, contemporaneous records of services she and her staff provide to clients, and that she stop trying to justify legal fees for clerical tasks, such as copying and making files, in future fee requests.

DONE AND ORDERED in Orlando, Florida, on March 26, 2012.

KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

Copies provided to:

Debtors:  William Brian Dorn and Summer Murphy-Dorn, 1577 Maidencane Loop, Oviedo, FL  32765

Chapter 7 Trustee:  Leigh R. Meininger, P.O. Box 1946, Orlando, FL  32802-1946

Debtor:  Scott Howard Schmierer, 231 Holiday Lane, Winter Springs, FL  32708-3203

Chapter 7 Trustee:  Emerson C. Noble, P.O. Box 195008, Winter Springs, FL  32708-3203

Debtors' Counsel:  Marilyn J. Hochman, Hochman & Peppler LLC, 3208 W. Highway 426, Suite 2000, Oviedo, FL  32765

United States Trustee, Attn:  Timothy S. Laffredi, 135 W. Central Blvd, Suite 620, Orlando, FL  32801